IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESTER BUTCHER,** | : | CIVIL ACTION NO. 1:07-CV-0546 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **UNITED STATES OF AMERICA**, et al., | : | |
| Respondents | : | |

**MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Lester Butcher ("Butcher"), an inmate confined at the United States Penitentiary at Canaan, Waymart, Pennsylvania.  Butcher contends that his due process rights were violated in the context of a disciplinary hearing.  For the reasons discussed below, the petition will be denied.

**I.   Statement of Facts**

On October 14, 2005, an incident report was delivered to Butcher charging him with "Interfering with staff in performance of duties (high severity) and Most like Assaulting any person (minor assault)."  (Doc. 2, p. 12).  The incident was described by Corrections Officer Cindy A. Skelton ("reporting officer") as follows:

> On 10-13-05 at approximately 2:00 p.m., after completing a search of cell 224L A-1 unit, I walked out of the cell carrying confiscated items.  Inmate Lester Butcher, # 03969-078, approached me and asked what I had.  When I told him I was confiscating his head phones he said "no, those are mine" he then grabbed my hand and took the head phones from me.  I then ordered him to return the head phones to me.  He complied.  I then notified the Operations

> Lieutenants. Inmate Butcher was medically assessed and no injuries were noted. I was medically assessed and had no injuries.

Id. Butcher was provided with a copy of the incident report on October 14, 2005. He was later notified that the matter was referred to the disciplinary hearing officer ("DHO") for further hearing. He indicated that he wished to have the assistance of a staff member representative, requested that two inmate witnesses be allowed to appear on his behalf, asked the reporting officer be present, and sought review of the surveillance video tape of the incident. (Doc. 2, p. 13).

The disciplinary hearing was held on October 27, 2005. (Doc. 2, p. 14). After being advised of his rights, and indicating that he understood them, Butcher made the following statement:

> I never grabbed her hand. I was at the microwave while she was searching my cell. When she was finished, she came over to where I was and asked if I liked tattoos. I thought that maybe she found something to do tattoos with or something like that. I told her I don't do tattoos and asked her if she found something in my room. She said she took some headphones that were altered. I told her that my headphones were not altered, at this point she opened the bag to show me the headphones. I reached into the bag to show her the headphones were not altered and then I put them back in the bag and told her I wanted a confiscation form. I later asked her again for a confiscation form, as I have lost a lot of property in the past this same way. I think that she just did this because she was mad because I asked her for a confiscation form. At no time did I touch her.

(Id.)

Butcher's staff representative noted no discrepancies in the disciplinary process, and reported that he met with Butcher in advance of the hearing to discuss the case and, as requested by Butcher, viewed the video tape. (Doc. 2, p. 14). (Id.)

When questioned about the content of the video tape, the staff representative indicated that "he could not tell if Butcher had actually grabbed the officer's hand, as the angle of the camera only showed the officer's back and blocked the view of the actual incident as written." (Doc. 2, p. 15). He further noted that "the officer did not react as if she had been assaulted and actually left the area where Butcher was and then returned a few seconds later and interacted with Butcher again, before departing." (Id.)

Both inmate witnesses appeared at the hearing and testified that they witnessed the disagreement between Butcher and the officer over the headphones. One witness described Butcher's temperament as "heated." (Id.) However, both inmates testified that they did not see him take headphones from the officer or grab the officer's hand. (Doc. 2, p. 15).

Although Butcher also requested that the reporting officer be present, the DHO "believed that the reporting officer was an adverse witness and their knowledge of the incident was summarized in the incident report, therefore the reporting officer was not called." (Id.)

The DHO concluded that Butcher committed the charged acts. In so finding, he relied on the reporting officer's statement in the incident report that Butcher grabbed her hand and took the headphones. Also, he considered Butcher's statement admitting that he reached into the bag the officer was holding and retrieved the headphones. Because the inmate witnesses testified that they did not see Butcher take the headphones, their statements contradicted Butcher's account

of the incident and were deemed unreliable.  Finally, in weighing the testimony of the staff representative, the DHO noted that "although the officer may have not reacted in [a] way that would indicate an assault, she did call the Operation Lieutenant and write an incident report.  One of the elements of the offense of Assault (Code 224) is the unconsenting touching of another, which may not cause one to react as if they were seriously assaulted."  (Doc. 2, p. 16).  He summarized the above as follows:

> After the consideration of all evidence, the DHO has drawn the conclusion [from the] greater weight of the evidence; specifically, the eyewitness account of the reporting staff member, that Butcher grabbed her hand, Aponte's [inmate witness] statement that Butcher was heated during the incident, coupled with the inmate's statement that he did take the headphones without the officer's consent, [that] the prohibited act of Interfering with staff in the performance of their duties (most like assaulting any person), Code 298, was committed.

(Doc. 2, p. 16).  Butcher was sanctioned with thirty days of disciplinary segregation, twenty-seven days disallowance of good conduct time, and ninety days loss of telephone privileges based on the following:

> Interfering with staff in the performance of their duties (most like assault), hinders staff's ability to effectively and efficiently perform duties commensurate with their assigned duties.  This type of behavior is considered disruptive to the security and orderly running of the institution which requires punishment.  The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his behavior.
>
> It was noted that Butcher has a past disciplinary record of assaulting staff and fighting with other inmates.  The sanctions of disciplinary segregation and loss of good conduct time were imposed to demonstrate the seriousness of the prohibited act and as punishment for his conduct.  The loss of telephone privileges

> was imposed to deter further behavior.  It is hoped that these sanctions prompt Butcher to modify his interactions with staff in the future.

(Id.)  This finding was upheld on appeal.  (Doc. 2, p. 20).  It was concluded that Butcher's due process rights were upheld during the disciplinary process, that the greater weight of the evidence supports the DHO's decision, and that the sanctions were commensurate to the severity level of the offense and in compliance with policy.

Butcher contends that respondents were negligent in their investigation, in their refusal to review the tapes, and in imposing such severe sanctions.  ( Doc. 2, p. 7).  He seeks restoration of his good conduct time.  (Id.)

**II.    Discussion**

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly unless circumstances beyond the control of the investigator intervene.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a

prohibited act listed in the high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Butcher was charged with an offense in the high severity category, the matter was referred for a disciplinary hearing.

High Category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564 (1974).

Butcher lodges two arguments in connection with the surveillance videotape. He first contends that he was "clearly" denied access to video surveillance tape that would "irrefutably prove" that he did not assault the reporting officer. (Doc. 2, p. 3, ¶ 5). However, it is clear from the record that, at Butcher's request, his staff representative viewed the tape and found that it was inconclusive on the subject. Specifically, the staff representative testified that "the angle of the camera only showed the officer's back and blocked the view of the actual incident. . . ." (Doc. 2, p. 15). Hence, this argument is without merit.

Likewise, his second argument, that the investigation was flawed because the DHO and investigator failed to view the videotape, is also without merit given the fact that the videotape was inconclusive. The failure to view the videotape in no way compromised the investigation or the DHO's final determination.

Butcher also contests the sufficiency of the evidence. The DHO's decision is required to be supported by some evidence in the record. See Superintendent v. Hill, 472 U.S. 445, 454 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was some evidence from which the conclusion of the tribunal could be deduced. See Hill, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether any evidence in the record that could support the DHO's conclusion. See id.

In considering the evidence, as recited in the statement of facts section, *supra*, the court finds that there was "some evidence" to support the DHO's decision, specifically, the statement of the reporting officer, the conflicting testimony of Butcher and the inmate witnesses, evidence that Butcher was "heated" during the altercation, and his admission that he reached into the bag and removed the headphones. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. Hill, 472 U.S. at 455-56. In the instant case, there is ample evidence to support the

DHO's decision. Thus, the petition will be denied with respect to Butcher's claim that there was insufficient evidence to support the DHO's decision.

Butcher also challenges the severity of the sanctions imposed by the DHO. The sanctions that may be imposed upon a finding of guilt of a "High Category" offense include, *inter alia*, disallowance of fourteen to twenty-seven days of earned good conduct time, up to thirty days disciplinary segregation, and loss of privileges. 28 C.F.R. §541.13, Table 3. He is not entitled to relief on this ground because the sanctions imposed upon him, disallowance of twenty-seven days of good conduct time, thirty days disciplinary segregation, and loss of telephone privileges, are within the range of appropriate sanctions for "High Category" offenses. See id.

### III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

　　　　　　　　　　　　　　　　　　　　S/ Christopher C. Conner
　　　　　　　　　　　　　　　　　　　　CHRISTOPHER C. CONNER
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:　　　July 23, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LESTER BUTCHER,** : | CIVIL ACTION NO. 1:07-CV-0546 |
| : | |
| Petitioner : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **UNITED STATES OF AMERICA, et al.,**: | |
| : | |
| Respondents : | |

## **ORDER**

AND NOW, this 23rd day of July, 2007, upon consideration of the petition for writ of habeas corpus (Doc. 1) and the memorandum in support of the petition (Doc. 2), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus (Doc. 1) is DENIED.

2. The Clerk of Court is directed to CLOSE this case.


                              S/ Christopher C. Conner
                              CHRISTOPHER C. CONNER
                              United States District Judge